## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

EYE LASER CARE CENTER LLC,
STEPHEN WEINSTOCK, M.D., NORMAN
RAPPAPORT, M.D., and WARREN CROSS,
M.D.,

              Plaintiffs,

    v.

                                Civ. Action No. 07-4788 (KSH)

MDTV MEDICAL NEWS NOW, INC. and
PAUL ARGEN,

              Defendants.                      __OPINION__

### Katharine S. Hayden, U.S.D.J.

      Here the Court addresses defendant MDTV's motion for reconsideration of the portion of

its October 31, 2008 opinion (D.E. 314) (hereinafter, the "October 31 opinion") deciding the law

applicable to defendants MDTV and Paul Argen's counterclaim against plaintiff Stephen

Weinstock.

      In their reconsideration motion, MDTV and Paul Argen (collectively, "MDTV") seek

review of the Court's decision that MDTV's counterclaims would be governed by California

law.

      The Court assumes familiarity with the relevant facts.

I.     Standard of Review

      Under Local Civil Rule 7.1(i), which governs the Court's review, the moving party must

set forth the factual matters or controlling legal authorities it believes the court overlooked in

reaching its initial decision.  "Whether to grant a motion for reconsideration is a matter within

the Court's discretion, but it should only be granted where such facts or legal authority were

indeed presented but overlooked." *Francis v. Joint Force Headquarters Nat. Guard*, No. 05-4882, 2009 WL 90396, *5 (D.N.J. Jan. 12, 2009).   Under the Third Circuit's standard, the movant for reconsideration must show either an intervening change in the controlling law; the availability of new evidence that was not available when the court rendered the judgment in question; or a need to correct a clear error of law or fact or to prevent manifest injustice. *Max's Seafood Café ex rel. Lou-Ann, Inc., v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).   To warrant reconsideration, it must be that "dispositive factual matters or controlling decisions of law were overlooked," as "mere disagreement" with the Court should be reserved for the appellate courts. *United States v. Compaction Sys. Corp.*, 88 F.Supp.2d 339, 345 (D.N.J. 1999).

II.     The October 31, 2008 Opinion

In its October 31 opinion, the Court concluded that plaintiff Weinstock's claims would be decided under Florida law, Cross's and Rappaport's claims would be decided under Texas law, and Eye Laser Care Center's ("ELCC") claims would be decided under California law.   The Court erroneously stated that counterclaims existed against ELCC, Rappaport, and Cross, when in fact those counterclaims had earlier been dismissed and only counterclaims against Weinstock remained.   As stated in the Court's June 19, 2008 Final Pretrial Order, "the only MDTV/Argen counterclaims remaining against plaintiff Weinstock are Count III (Breach of Contract) and Count IV (Breach of Duty of Good Faith and Fair Dealing)."   (D.E. 294-2 p. 77.)   With respect to the subject of the current reconsideration motion, the October 31 opinion determined that MDTV's counterclaims would be decided under California law:

> In its September 2003 answer (with counterclaims), MDTV did not invoke any foreign state law on its counterclaims and only on its third-party claim for misappropriation of trade secrets invoked state law—that of California.   Plaintiffs are correct that MDTV's failure to timely invoke any foreign state's law in its counterclaims now bars MDTV from asserting any state law but California's as to its *counterclaims* at this juncture.   *See Hurtado v. Superior Court*, 115 Cal. Rptr.

2

> 106 (1974); *see also Employer's Ins. of Wasau v. Tri-World Ins. Agency, Inc.*, No.
> 95-55187, 1998 U.S. App. LEXIS 969 *7-8 (9th Cir. 1988) ("California's conflict
> of law rules provide that the forum generally should apply its own substantive law
> unless a party timely invokes the law of a foreign state.  Since no party invoked
> any law other than that of the forum, the district court properly applied California
> law." (internal citation omitted)).

(D.E. 314 (emphasis in original).)  On reconsideration, MDTV argues that the Court should have

conducted a full choice-of-law analysis rather than finding that MDTV's assertion of Florida law

after the pleadings stage amounted to its failure to "timely invoke" a foreign state's law.  MDTV

further contends that it did, in fact, assert the applicability of Florida law to its counterclaim

against Weinstock several times in the course of the litigation, albeit after the pleadings stage.

III.     Discussion

        *Was MDTV's Invocation of Florida Law Timely?*

        This action, including MDTV's counterclaim against Weinstock, was transferred *sua*

*sponte* to this Court from the Southern District of California in September 2007.  As the case is

brought on diversity jurisdiction under 28 U.S.C. § 1332, the Court is required to look to state

law as the source of controlling authority.  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

Where, as here, a venue transfer is made pursuant to 28 U.S.C. § 1404, the transferee court must

apply the laws of the state in which the transferor court is located.  *Van Dusen v. Barrack*, 376

U.S. 612 (1964); *see also Ferens v. John Deere Co.*, 494 U.S. 516, 527-28 (1990) (extending the

*Van Dusen* rule to all § 1404(a) transfers, whether initiated by plaintiff or defendant).  Under the

*Erie* doctrine, the forum state's choice of law rules must be applied as part of the transferor

state's body of law.  *Klaxon v. Stentor Elec. Co.*, 313 U.S. 487 (1941).  Thus, the Court must

look to the laws of the state of California to determine which state's substantive law should be

applied to these motions.  *See Employers Ins. v. Tri World Ins. Agency*, No. 95-55187, 1998 U.S.

App. LEXIS 969 (9th Cir. Jan. 22, 1998) ("In diversity cases, federal courts must follow the conflict of law rules prevailing in the forum state.").

In *Hurtado v. Superior Court of Sacramento County*, 114 Cal.Rptr. 106, 110 (1974), the California Supreme Court stated that:

> [G]enerally speaking the forum will apply its own rule of decision unless a party litigant timely invokes the law of a foreign state.  In such event he must demonstrate that the latter rule of decision will further the interest of the foreign state and therefore that it is an appropriate one for the forum to apply to the case before it.

Guided by several authorities, the Court reconsiders its position that MDTV did not timely invoke Florida law with respect to its surviving counterclaims.  Although Fed. R. Civ. P. 44.1 ("Rule 44.1") principally relates to invoking the law of foreign nations, decisional law relating to that rule is instructive on the issue of invoking law of another state in the Union.  In *DP Aviation v. Smiths Industries Aerospace & Defense Systems Ltd.*, 268 F.3d 829, 847 (9th Cir. 2001), the Ninth Circuit found that "Rule 44.1 does not require in all cases a cut-off date after which notice [of a potential application of foreign law] cannot be deemed reasonable."  The Advisory Committee Notes to Rule 44.1 also support a conclusion that applicable law need not be invoked at the outset:

> In some situations the pertinence of foreign law is apparent from the outset; accordingly the necessary investigation of that law will have been accomplished by the party at the pleading stage, and the notice can be given conveniently in the pleadings. In other situations the pertinence of foreign law may remain doubtful until the case is further developed. *A requirement that notice of foreign law be given only through the medium of the pleadings would tend in the latter instances to force the party to engage in a peculiarly burdensome type of investigation which might turn out to be unnecessary*; and correspondingly the adversary would be forced into a possibly wasteful investigation.

*Advisory Committee Notes*, Fed. R. Civ. P. 44.1 (emphasis added).  The official commentary regarding Rule 44.1 makes clear that it would be burdensome and impracticable to require

invocation of foreign law in the pleadings stage, a principle that is helpful in weighing MDTV's reconsideration motion.

Decisional law also suggests that other states' laws need not be identified in pleadings, so long as it is raised before trial.  In *Employers Ins. v. Tri World Ins. Agency*, 1998 U.S. App. LEXIS 969, *7 (9th Cir. Jan. 22, 1998), the Ninth Circuit found the invocation of another state's law untimely where it was asserted on *appeal*, observing that "[s]ince no party invoked any law other than that of the forum" before the district court, "the district court properly applied California law."  The *Hurtado* precedent requiring a timely invocation of another state's law is not quite the dead letter that MDTV would suggest, *see In re Heritage Bond Litig.*, 02-ML-1475, 2004 U.S. Dist. LEXIS 15386, *20-21 (C.D. Cal. July 12, 2004) ("This choice of law argument is unpersuasive . . . . As an initial matter, the argument is untimely and prejudicial to the parties involved in this litigation because all parties have litigated the common law claims under California law since the commencement of this action several years ago.  Moreover, this Court has also made findings and issued rulings under California law").  Notwithstanding, the Court determines that the correct result is that MDTV's invocation of Florida law—after the pleadings, but before trial[1]—as to its complaint against Weinstock be deemed timely and effectual.

Applying the standard, upon review of the law and facts, the Court finds that reconsideration is proper because "dispositive factual matters or controlling decisions of law were overlooked."  *See Compaction Sys. Corp.*, 88 F. Supp.2d at 345.  In particular, the Court's October 31 opinion erroneously relied upon *Hurtado v. Superior Court* to bar invocation of Florida law over the counterclaims and overlooked controlling authority permitting invocation of

---

[1] The Court takes notice of the docket entries identified by MDTV as demonstrating its invocation of Florida law as early as June 29, 2006 in the briefing on MDTV's motion for partial summary judgment as to Stephen Weinstock (D.E. 163, p. 13), as well as in MDTV's brief submitted on February 13, 2007.  (D.E. 254, p. 9.)

foreign state law after the pleadings stage and before trial.  For those reasons, reconsideration is warranted.

*Does Florida Law Apply?*

Having determined that MDTV timely raised the applicability of Florida law to its counterclaims against Weinstock, the Court must identify the correct state's law to apply under California's choice-of-law decision tree.  And MDTV, the party invoking the foreign law, "must demonstrate that the latter rule of decision will further the interest of the foreign state and therefore that it is an appropriate one for the forum to apply to the case before it."  *Wash. Mut. Bank v. Superior Court*, 24 Cal. 4th 906, 919 (2001).  The test for choice-of-law questions in California is a governmental interest inquiry, which "entails three steps."  *McGhee v. Arabian Am. Oil Co.*, 871 F.2d 1412, 1422 (9th Cir. 1989).

As set forth by the California Supreme Court, "[u]nder the first step of the governmental interest approach, the foreign law proponent must identify the applicable rule of law in each potentially concerned state and must show it materially differs from the law of California."  *Wash. Mut. Bank*, 24 Cal. 4th at 919-20.  Merely because "two or more states are involved does not in itself indicate there is a conflict of laws problem."  *Id.* at 920.  Second, if the possible rules of decision differ, the court must "determine what interest, if any, each state has in having its own law applied to the case" to find whether a true conflict exists.  *Id.*  Thus, "[i]f only one jurisdiction has a legitimate interest in the application of its rule of decision, there is a 'false conflict' and the law of the interested jurisdiction is applied."  *McGhee*, 871 F.2d at 1422.  Even when faced with "materially different laws, there is still no problem in choosing the applicable rule of law where only one of the states has an interest in having its law applied."  *Wash. Mut. Bank*, 24 Cal. 4th at 920.  A court need not go any further unless it finds that each state has an

interest in applying its own law, in which case it must "take the final step and select the law of the state whose interests would be 'more impaired' if its law were not applied." *Id.*

As was stated in the Court's October 31 opinion, MDTV argues for the applicability of Florida law to its counterclaim against Weinstock, whereas Weinstock argues that California law should govern.  As to the first step, both the parties and the Court recognize that California law strongly disfavors restrictive covenants in employment contracts, *see United Rentals, Inc. v. Pruett*, 296 F. Supp. 2d 220, 231 (D. Conn. 2003) ("California law generally prohibits covenants not to compete, and California public policy strongly favors employee mobility"), and Florida law more readily enforces such covenants, *see Dry Cleaning To-Your-Door, Inc. v. Waltham, L.L.C.*, 2007 U.S. Dist. LEXIS 83445 (D. Colo. Oct. 30, 2007) ("Florida law generally permits the enforcement of reasonable restrictive covenants and Florida's courts have made clear that the current version of [Section 542.335] is aimed at making enforcement of bona fide restrictive covenants easier and more certain" (internal quotations omitted)), meaning that the laws "materially differ."

Accordingly, the Court must consider whether a "true conflict" exists in that each jurisdiction has an interest in its laws being ruled determinative of the dispute.  Importantly, the reasoning of the October 31 opinion's analysis applicable to the *claims* of plaintiffs—including Weinstock—is also relevant to MDTV's *counterclaims* because both relate to the same contractual dispute between the same parties.  As was discussed in the October 31 opinion, the three physicians, including Weinstock, traveled to New Jersey—not California—for production of MDTV programming.  Weinstock pled his case under Florida's laws.  With respect to plaintiff and counterclaim-defendant Weinstock's statement of his own case, the Court earlier found that

> [H]e pled no contacts with California, and instead explicitly framed his case under
> Florida law.  Weinstock, identifying himself as a Florida citizen, pled regarding

> events unfolding in various parts of that state, including Largo, where he operated
> his practice.  Per his complaint, Weinstock's marketing territory under his MDTV
> contract encompassed Tampa Bay, St. Petersburg, and Clearwater, Florida.
> Weinstock's only apparent connection with California is that diversity jurisdiction
> with a California co-plaintiff was secured, permitting the case to be venued in the
> SDC.

(D.E. 314.)  Thus, as even Weinstock—who now opposes Florida law and desires California law—framed the case, there were no significant contacts with California that would translate into the State of California having an interest in adjudicating the dispute under its laws.

California decisional law also indicates that it does not have a governmental interest in a contractual dispute between Florida resident Weinstock and New Jersey resident MDTV. MDTV points to the California decision of *Norwest Mortgage, Inc., v. Superior Court*, 72 Cal. App. 4th 214, 226  (Cal. App. 1999) as controlling authority demonstrating California's lack of interest in applying its law concerning unfair competition to out-of-state parties with non-California injuries and contacts to California only by virtue of litigation being venued there.  In *Norwest*, the California Court of Appeal declined to apply California's unfair competition law on the basis that "the existence of personal jurisdiction over the defendant does not alone permit application of the forum law to the claims of nonresident plaintiffs," and because those with no California injuries or contacts "had no expectation that California law would govern their disputes with Norwest Mortgage."  *Id.* at 226-27 n.16.  Any connection to California, including the fact that MDTV does business in California as well as its involvement with Dr. Nordan, amounts to insufficient contacts to warrant application of California law to either of MDTV's contract-related counterclaims against Weinstock under the *Norwest* precedent and that of *Phillips Petroleum v. Shutts*, 472 U.S. 797 (1985).

In *Shutts*, the Supreme Court determined that application of Kansas law to "every claim" in a class action concerning gas leases in multiple states was "sufficiently arbitrary and unfair as

to exceed constitutional limits." *Shutts*, 472 U.S. at 822.  Articulating a principle applicable to the present dispute, the *Shutts* Court found that "[w]hen considering fairness in this context, an important element is the expectation of the parties," and observed that "[t]here is no indication that when the leases involving land and royalty owners outside of Kansas were executed, the parties had any idea that Kansas law would control." *Id.* at 822.  Similarly, there is no indication that MDTV or Weinstock believed California law would apply during the formation or execution of their contract.  As recognized by the Court's June 19, 2008 Final Pretrial Order (D.E. 294-2 p. 77), "the only MDTV/Argen counterclaims remaining against plaintiff Weinstock are Count III (Breach of Contract) and Count IV (Breach of Duty of Good Faith and Fair Dealing)," both of which are chiefly contractual in nature and relate directly to the contractual relationship entered into by MDTV and Weinstock.  *See Pac. States Enters., Inc. v. City of Coachella*, 13 Cal. App. 4th 1414, 1425 (Cal. App. 4th Dist. 1993) (demonstrating that an implied contractual covenant of good faith and fair dealing must relate to a valid contract).

    In sum, because it appears that Weinstock's "only reasonable expectation" was that Florida law would apply, and because California has no legitimate governmental interest in its law governing, then California law should *not* be applied to MDTV's counterclaims.  *See Roesgen v. Am. Home Prods. Corp.*, 719 F.2d 319, 321 (9th Cir. 1983) (surmising that the California Supreme "[C]ourt w[ould] decline to apply California law when the facts indicate that the parties' only reasonable expectations were that the law of a foreign state would apply").  Inasmuch as Weinstock's home jurisdiction—Florida—has an interest, and California does not, a "false conflict" is presented, and Florida law will apply to MDTV's two counterclaims going forward in this litigation.

IV.     <u>Conclusion</u>

For the foregoing reasons, the Court has reconsidered its October 31, 2008 opinion with respect to the law governing MDTV's two remaining counterclaims and finds that Florida law will apply to those counterclaims.  An appropriate order will be entered.


<u>/s/ Katharine S. Hayden</u>
Katharine S. Hayden, U.S.D.J.

10